DANIEL S. WEISS (State Bar No. 91930)
LAW OFFICES OF DANIEL S. WEISS
2020 Hurley Way, Suite 210
Sacramento, California 95825
Telephone: (916) 569-1610
FAX No.: (916) 569-1612
e-mail: dweiss@danielweisslaw.com

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

In re:                                                          ) Case No. 12-21477-C-7
                                                                )
YOUSIF H. HALLOUM                                               )
                                                                ) DATE: February 26, 2014
                                                                ) TIME: 10:00 a.m.
              Debtor.                                           ) DEPT. C – Courtroom 35
_____)

## SIXTH AMENDED PLAN OF REORGANIZATION
### Dated February 25, 2014

Yousif Halloum, Debtor and Debtor-in-Possession, (hereinafter "Debtor") voluntarily filed the above-entitled case on January 26, 2012, for a reorganization of his debts and affairs. Debtor hereby proposes the following Third Amended Plan of Reorganization (hereinafter "Plan").

## CLASSIFICATION OF CREDITORS

The following is a designation of the classes of claims in the Plan. In accordance with the Bankruptcy Code §1123(a)(1), administrative expense claims and priority tax claims have not been classified and are excluded from the following classes.

**CLASS 1: Priority Claims**. Class 1 claims shall consist of all claims entitled to priority under §507 of the Code except those priority claims not classified.

**CLASS 2: Claims Secured by Real Property**. Class 2 claims shall include all claims allowed as claims secured by contractual and non-contractual liens and encumbrances upon real property of the Debtor to the extent so secured, except as provided in the following subclasses:

**CLASS 2A:** Class 2A shall consist of the under secured claim of Community Banks of Northern California, an operating division of real party in interest Bank Midwest, N.A. ("Bank Midwest"). Bank Midwest asserts a claim in the amount of $2,545,000.00 secured by a deed of trust on Debtor's ARCO station and convenience store located in Lodi, California with an agreed principal balance of $2,497,481.25 as of October 21, 2011. The real property is subject to a pending prepetition foreclosure process.

**CLASS 2B:** Class 2B shall consist of the undersecured claim of Wachovia secured by a first deed of trust on the Lodi property as described in the Disclosure Statement. The secured portion of the claim was fixed in the amount of $249,000.00 for purposes of confirmation by order dated October 29, 2012.

**CLASS 2C:** Class 2C shall consist of the undersecured claim of Wells Fargo Home Mortgage secured by a first deed of trust on the Henderson property as described in the Disclosure Statement. The secured portion of the claim was fixed in the amount of $193,000.00 for purposes of confirmation by order dated October 29, 2012.

**CLASS 2D:** Class 2D shall consist of the fully secured claim of the County of San Joaquin for real and personal property taxes with an estimated balance in January 2014 of $138,698.00 after credit of reimbursement of sewer fees..

**CLASS 3: Claims Secured by Personal Property**. Class 3 claims shall include all claims allowed as claims secured by contractual and non-contractual liens on personal property of the Debtor to the extent so secured, except as provided in the following sub-classes:

**CLASS 3A:** Class 3A shall consist of the under secured claim of Bank Midwest described in Class 2A secured by substantially all of Debtor's business related personal property, subject to a pending prepetition foreclosure process.

**CLASS 3B:** Class 3B shall consist of the under secured claim of Element Financial Corp. formerly known as Coactiv Partners secured by a purchase money security interest in certain items of equipment associated with Debtor's Subway franchise. The secured portion of the claim was fixed in the amount of $6,000.00 pursuant to a motion to value collateral.

**CLASS 4: Executory Contracts and Unexpired Leases**. Class 4 claims shall

include all executory contracts and unexpired leases not previously rejected except as provided in the following subclasses:

**CLASS 4A:** Class 4A shall consist of the franchise and dealer agreement with BP West Coast with an amount to cure of $328,691.01.

**CLASS 4B:** Class 4B shall consist of franchise agreement with Subway, which agreement is current.

**CLASS 5: General Unsecured Claims.** Class 5 claims shall consist of the allowed general unsecured claims.

**CLASS 6: Equity Interests.** Class 6 shall consist of the assets of the estate subject to the claims of the parties-in-interest under this Plan.

**PROVISIONS FOR PAYMENT OF CREDITORS**

**ADMINISTRATIVE CLAIMS:** Administrative claims are not impaired under the Plan and shall be paid in full upon entry of the order allowing such claim, if such order is required, or upon the Effective Date of the Plan, unless otherwise agreed by the parties. Any sums due the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid as provided in said section. Upon confirmation of the Plan, $250,000.00 shall be from Debtor's family to be held for payment of administrative claims. The fees and costs of Debtor's attorney shall be subordinated to payment of the fees of the Chapter 11 Trustee and his professionals from the deposit and the balance shall be payable post-confirmation from cash flow in excess of all plan payments and required operating capital..

**UNCLASSIFIED PRIORITY CLAIMS:** Unclassified Priority Claims consists generally of priority tax claims shall be paid in full with interest at the statutory rate amortized over the months remaining in the 60 months following the filing of the case after the Effective Date payable quarterly beginning at the end of the first full quarter after the Effective Date, except payment to the Board of Equalization, which claim shall be paid over 72 months following the Effective Date payable quarterly beginning at the end of the first full quarter.

**CLASS 1 CLAIM:** Class 1 claims consisting generally of priority claims other than Unclassified Priority Claims shall be paid in full upon the Effective Date. Debtor is not aware of any creditors in this Class. These claims are not impaired.

**CLASS 2:** The holder of Class 2 claims shall retain their liens on the real property of Debtor which shall secured the amount of the claim allowed pursuant to documents in effect at the time of the filing of the Petition in this case and/or documents affected thereafter pursuant to approval of the Court. All terms of obligations owed to holders of Class 2 claims shall remain as set forth in existing documents except for the provisions for specific subclasses below, which claims are impaired.

**CLASS 2A**: Notwithstanding anything to the contrary anywhere in this Plan, the treatment of the Class 2A claim (currently held by Community Banks of Colorado, an operating division of real party in interest Bank Midwest, N.A., which is now known as NBH Bank, N.A, and is referred to here as "Bank Midwest," a term intended to mean whoever may be the holder of the Class 2A claim from time to time) shall be as set forth in the following paragraphs (1) through (9). (For clarity, the entire treatment text for Class 2A is referred to as "§ T-2A," and references to specific elements in § T-2A are preceded by the "¶" character (*e.g.*, "¶ (1)"):

(1) <u>Lien Retention</u>: Except as provided in the following sentence, Bank Midwest shall retain its liens on all real and personal property encompassed by the documents identified in ¶ (3), including property acquired before or after commencement of Debtor's case on January 26, 2012, and such liens shall continue to secure all amounts due under such documents unless and until Debtor has fully paid the Class 2A claim in accord with ¶ (6). Provided Debtor is in full compliance with § T-2A, Debtor may use cash collateral arising from Debtor's normal business operations (a) for expenses incurred in the ordinary course of Debtor's business commonly known as Flag City ARCO & Subway ("Business"), located on the realty commonly known as 14931 Flag City Boulevard, Lodi, California 95242-9313 ("Realty"); (b) to pay other claims in accord with this Plan; and (c) to provide for compensation to Debtor of $3,000 per month. Except as provided in the foregoing sentence, and unless and until Debtor has fully paid the Class 2A claim in accord with ¶ (6), the use of any cash collateral for purposes other than performing duties under § T-2A is not permitted and, except with Bank Midwest's express written consent, shall constitute a default for purposes of ¶ (8)(d). (To illustrate, and without limiting the reach of the foregoing sentence, such a default would arise from use of cash collateral to make gifts (aside from nominal tokens in conventional settings) or investments (such as stock trading) not directly necessary to

4

1   operation of the Business; to pay other claims under this Plan either in amounts or at times not

2   explicitly required by the Plan or to pay such claims at any time when Debtor is *not* in full

3   compliance with § T-2A; or to provide compensation to Debtor exceeding $3,000 per month

4   (unless the excess above $3,000 in any calendar month is less than the amount by which the mean

5   compensation over the prior three calendar months was below $3,000).)

6         (2) <u>Restraint on Further Encumbrance</u>:  Except (a) for purchase-money financing on new

7   equipment (where "new" excludes replacements for equipment Debtor had as of the Effective

8   Date) or (b) with Bank Midwest's prior express written consent, Debtor shall *not* incur any

9   obligation that is or purports to be secured by property subject to any lien preserved under ¶ (1).

10  On or before the Effective Date, Debtor shall deliver to Bank Midwest a properly executed and

11  notarized memorandum of understanding acceptable to the San Joaquin County Recorder

12  ("MOU") that recites the foregoing prohibition and is in form and substance acceptable to Bank

13  Midwest.

14        (3) <u>Contract Etc. Rights Retention</u>:  Except as otherwise provided in § T-2A, Bank

15  Midwest shall retain unaltered all of the legal, equitable, and contractual rights afforded by any of

16  (a) Debtor and Bank Midwest's Business Loan Agreement dated June 21, 2005; (b) Debtor's Deed

17  of Trust of the same date; (c) the parties' Commercial Security Agreement of the same date; (d)

18  Related Documents as defined in any of the foregoing; or (e) the parties' Change in Terms

19  Agreement dated September 29, 2010.

20        (4) <u>Allowed Secured & Residual Claims</u>:  For purposes of this Plan, Bank Midwest shall

21  have (a) an allowed secured claim in Class 2A of $2,048,350—with no further deductions, offsets,

22  or adjustments on account of payments from Debtor at any time before the Effective Date, on

23  account of liens held by others, or on account of claims held by Debtor or his estate, *all of which*

24  *claims held by Debtor or his estate (whether now known or unknown) are hereby fully and finally*

25  *waived and released*; and (b) an allowed unsecured claim in Class 5 of $911,671.45 (with no

26  deductions, offsets, or adjustments whatsoever), comprised of (i) an unsecured balance of

27  $614,298.96 due under the documents identified in ¶ (3) ("Deficiency Claim") and (ii) a never-

28  secured claim of $297,372.49 attributable to a prepetition overdraft of Debtor's checking account

at the predecessor to Bank Midwest.  The allowed unsecured claim (including the Deficiency Claim) shall be treated with other claims in Class 5, *but* the Deficiency Claim shall remain secured by the liens preserved under ¶ (1) (that is, no such lien shall be considered "stripped" or removed as to the Deficiency Claim, nor shall any affected property be considered or deemed to revest or to be transferred free of such lien) unless and until Debtor has fully paid the Class 2A claim in accord with ¶ (6).  Nothing in this ¶ (4) shall preclude Bank Midwest from asserting claims greater than those allowed here for any purpose other than treatment under this Plan (*e.g.*, if Debtor's bankruptcy case were to be converted or dismissed).

     (5) <u>Interest</u>:  Bank Midwest's Class 2A claim shall bear interest at a variable rate of 1% (*i.e.*, 100 basis points) above the Prime Rate as published in the Wall Street Journal, determined and calculated as provided in the parties' Change in Terms Agreement identified in clause (e) of ¶ (3), except that the rate shall never be less than 4.75% per annum nor more than 5.75% per annum.

     (6) <u>Payment Terms</u>:  Bank Midwest's Class 2A claim shall be paid in monthly installments, the first one due 30 days after the Effective Date and subsequent installments due on the same calendar day of ensuing months, amortized over 25 years, but the full remaining balance of the Class 2A claim (including accrued interest and all other fees, costs, or expenses provided for in any of the documents identified in ¶ (3)) shall be due five years after the initial installment is due.  Unless adjusted after a change in the interest rate, each monthly installment shall be in the amount of $11,647.00.  Unless otherwise agreed or directed by Bank Midwest in writing, installments (a) shall be made by check payable to ""Community Banks of Colorado," with a memo line reading "Halloum Plan Payment," and (b) shall be delivered as provided in ¶ (9)(a)(i).

     (7) <u>Requisite Notice of Certain Payments</u>:  Not later than 15 calendar days after the date on which they fall due under the Plan or under applicable nonbankruptcy law, whichever date is later, Debtor shall provide Bank Midwest with proof that he has paid (a) amounts necessary to cure property tax arrearages secured by the Realty; (b) property taxes secured by the Realty that first became or become due after January 26, 2012; and (c) premiums necessary to maintain commercially usual and customary fire and casualty insurance against damage to, or loss in the value of, Bank Midwest's collateral in an amount not less than $2,500,000.  For purposes of the

foregoing sentence, "proof" of payment shall consist of (d) true and correct copies of the front and back sides of a cancelled check in the requisite amount and payable to the appropriate payee or (e) such other evidence as Bank Midwest may have already stated (in a writing delivered to Debtor before such proof is due) that it will consider sufficient to meet the requirement.

(8) <u>Remedies</u>:  All of Bank Midwest's foreclosure proceedings on real property pending on the Effective Date shall be deemed rescinded, and a Notice of Rescission of Notice of Default shall be recorded to confirm the rescission within 30 days after the Effective Date.  Except as otherwise provided in ¶ (8)(m), enforcement of Bank Midwest's rights under § T-2A shall be governed as follows in sub¶¶ (8)(a) through (8)(*l*):

  (a) <u>Stay Relief</u>:  On the Effective Date, and without any further order, Bank Midwest shall have full relief from the automatic stay to do anything and everything reasonably necessary to protect or recover its collateral should Debtor not perform in accord with § T-2A (*e.g.*, to record or file a notice concerning Bank Midwest's lien rights [*e.g.*, the MOU under ¶ (2)], to give a default notice under ¶ (8)(e), to demand delivery of the Lieu Deed and Bill of Sale (identified in ¶ (8)(b) immediately below) under ¶ (8)(*i*), to record the Lieu Deed, to sue for possession of the Realty and any or all of its personal property collateral, to foreclose on any of its security to clear title if need be, and to follow procedures applicable to performance issues subject to ¶ (8)(m)).

  (b) <u>Lieu Deed & Bill of Sale</u>:  On or before the Effective Date, Debtor shall deliver to the Escrow (see ¶ (8)(c) below) a properly executed and notarized (i) Deed in Lieu of Foreclosure of the Realty ("Lieu Deed") and (ii) Bill of Sale as to all personalty subject to any lien preserved under ¶ (1) ("Bill of Sale"), both in form and substance acceptable to Bank Midwest

  (c) <u>Escrow</u>:  The entity required to hold and deliver (or to return) the Lieu Deed and Bill of Sale under this Plan is referred to as the Escrow.  The initial Escrow is Michael J. Kasolas ("Kasolas"), whose written acceptance of that role is a prerequisite to confirmation of the Plan.  If Kasolas (or any successor) becomes unable to serve as the Escrow, a successor willing to assume the role may be designated by Debtor and Bank Midwest jointly or, on request by either of them (with notice to the other), such designation shall be made by the United States trustee or the Court.

The sole duty of the Escrow shall be to deliver or to return the Lieu Deed and Bill of Sale as provided in ¶ (8)(*i*) or ¶ (8)(*l*), whichever applies, and the Escrow shall only be liable (if at all) for damages proximately caused by deficient or improper performance of that duty.  In any proceeding brought against the Escrow to enforce that duty, or to recover for deficient or improper performance, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses and, unless otherwise agreed by the Escrow in writing, dismissal of a complaint against the Escrow shall render the Escrow the prevailing party in that action or proceeding.  Except insofar as the Escrow acknowledges deficient or improper performance of the Escrow's delivery or return duty, or the Court or other appropriate tribunal determines that such performance was deficient or improper, Debtor shall fully indemnify the Escrow against any liability or loss that is not already compensable (by Debtor or Bank Midwest) under the prevailing party provision in the foregoing sentence.  On or before the Effective Date, Debtor shall remit $500 to the Escrow as compensation for required services (and reimbursement of attendant expenses), which sum shall be deemed earned when the Lieu Deed and Bill of Sale have been properly delivered as provided in ¶ (8)(*i*) or properly returned under ¶ (8)(*l*). The holder of this Claim is impaired.

      (d) <u>Actionable Default</u>:  Any of the following, if not timely cured, shall constitute a default by Debtor that entitles Bank Midwest to delivery of the Lieu Deed and Bill of Sale under ¶ (8)(*i*):

      (i) failure to make any payment required under ¶ (6) (that is, any monthly installment or the balloon balance) on or before the date due;

      (ii) failure to make any payment to cure property tax arrearages secured by the Realty on or before the date due under the Plan;

      (iii) failure to pay property taxes secured by the Realty that first became or become due after January 26, 2012, on or before the date due under applicable nonbankruptcy law;

      (iv) failure to pay premiums necessary to maintain commercially usual and customary fire and casualty insurance against damage to, or loss in the value of, Bank Midwest's collateral in an amount not less than $2,500,000 on or before the date such premiums are due under applicable nonbankruptcy law or agreements;

8

1  (v) failure to provide any proof of payment required under ¶ (7) on or before the
2  date such proof is due;
3  (vi) use of cash collateral not authorized under ¶ (1), other than to pay non-Class
4  2A claims in accord with this Plan *if* such use was made at a time when Debtor had not been
5  notified of a failure to comply with § T-2A and was not aware of his failure to do so;
6  (vii) failure to comply with any environmental law or regulation that is designed to
7  protect Bank Midwest's collateral from contamination (and attendant value loss); or
8  (viii) failure to maintain any of Bank Midwest's collateral in good order.
9  (e) <u>Default Notice</u>:  If Bank Midwest believes Debtor is in default under ¶ (8)(d), Bank
10  Midwest may give Debtor a notice of such default, which shall be directed to Debtor and
11  transmitted to him by ordinary first-class mail (postage prepaid) *and* by email, all addressed as
12  provided in ¶ (9)(b).  The notice shall be labeled (either in an email "subject" line or near the top
13  of the text) "Notice of Default--Plan § T-2A."  The notice shall reasonably identify the nature of
14  the asserted default, and although not necessary for that purpose, a notice that states "Default
15  under Plan § T-2A ¶ (8)(d)(___)" (where the blank is filled with the relevant lower-case Roman
16  numeral from the foregoing ¶ (8)(d)) and states the relevant performance item and (where
17  relevant) due date (*e.g*., "monthly installment due mm/dd/yy" or "tax payment proof due
18  mm/dd/yy") shall be deemed sufficient.
19  (f) <u>Cure Opportunity/Process</u>:  Except as otherwise indicated in this ¶ (8)(f), Debtor
20  shall have 60 calendar days in which to cure defaults of which Bank Midwest gives notice under
21  the foregoing ¶ (8)(e), commencing on the date such notice is sent to him by email, , with the
22  exception that Debtor may not cure an improper use of cash collateral that constitutes a default
23  under clause (vi) of ¶ (8)(e).  For a default under clause (vii) or (viii) of ¶ (8)(e), if the cure
24  requires more than 60 days, Debtor may cure if, immediately after receiving notice under ¶ (8)(e),
25  Debtor initiates steps that Bank Midwest (in its discretion, exercised in good faith) considers
26  sufficient to cure the default and thereafter continues and completes all reasonable and necessary
27  steps sufficient to produce compliance as soon as reasonably practical.
28

9

      (g) <u>Cure Confirmation Request</u>:  If Debtor believes a default has been cured, or that steps sufficient to extend the time for cure have been taken under the last sentence of ¶ (8)(f), Debtor may send Bank Midwest a request to accept the cure (or to acknowledge that steps sufficient to extend the time for cure have been taken under the last sentence of ¶ (8)(f)).  Any such request (i) must be labeled "Asserted Cure of Halloum Default--Plan § T-2A"; (ii) must be transmitted by email as prescribed in ¶ (9)(a)(ii); and (iii) must (A) identify the default ostensibly cured; (B) specify what has been done to cure, with documentary support where relevant; (C) request acceptance or rejection of the cure (or acknowledgement that steps sufficient to extend the time for cure have been taken under the last sentence of ¶ (8)(f)) within five business days; and (D) provide an email address to which the response should be sent.  If Bank Midwest fails to reply within five business days, Debtor's cure opportunity under ¶ (8)(f) shall be extended by one day for each day beyond five business days that Bank Midwest fails to reply.

      (h) <u>Cure Disputes</u>:  If Bank Midwest rejects a purported cure but Debtor contends it was sufficient, the Court presiding over Debtor's bankruptcy shall retain jurisdiction to resolve the matter on Debtor's request.  On 10 days' notice to Bank Midwest, Debtor may request a temporary stay by making a prima facie showing of cure (or of steps sufficient to extend the time for cure under the last sentence of ¶ (8)(f)).  Unless the Court orders otherwise for cause shown by Debtor, any final determination about whether the cure was sufficient must be made within 30 days of such a temporary stay, failing which the stay shall expire automatically, and Debtor's cure shall be deemed inadequate except as otherwise provided in the last sentence of ¶ (8)(*i*).

      (*i*) <u>Bank Midwest's Request for Lieu Deed Delivery</u>:  If Bank Midwest has given a default notice under ¶ (8)(e) and has determined that the default has not been cured within the time provided by ¶ (8)(f) (or that the default is not curable), then—unless it has received an order imposing a stay that is in force under ¶ (8)(h)—Bank Midwest may request delivery of the Lieu Deed and Bill of Sale.  Such a request must be signed or otherwise authenticated by an officer of Bank Midwest or by Bank Midwest's counsel of record in Debtor's bankruptcy, must be delivered to the Escrow, and must state as follows:

      **Request for Delivery of Halloum Lieu Deed After Default**

**TO**: Escrow ("Escrow") under Chapter 11 Plan ("Plan") of Yousif Halloum ("Debtor")

**FROM**: Bank Midwest

Debtor has defaulted under Plan § T-2A, and the default has not been cured within the time (if any) permitted.  Bank Midwest is not aware of any order from the Bankruptcy Court presiding over Debtor's case that stays relief for Debtor's default.

Therefore, Bank Midwest hereby requests that the Escrow deliver the original Lieu Deed and Bill of Sale (as those terms are defined in Plan § T-2A) forthwith to Bank Midwest at the following address: [Street Address for Delivery].

Upon receipt of a conforming request, and unless the Escrow has been served with an order from the Bankruptcy Court presiding over Debtor's case that continues to stay relief for Debtor's default, the Escrow shall deliver the Lieu Deed and Bill of Sale to Bank Midwest, at the street address given in the request, within 48 hours.  The Escrow is neither required nor authorized to consider or assess the accuracy of the statements contained in Bank Midwest's request for delivery (*e.g*., whether Debtor is in default).  Given a conforming request from Bank Midwest, and absent prior service of the requisite stay from the Bankruptcy Court, the Escrow's failure timely to deliver the Lieu Deed and Bill of Sale to Bank Midwest shall be a breach of the Escrow's duty, but—even if the statements in Bank Midwest's request for delivery are not accurate, and unless it has been served with a proper stay—the Escrow shall have no liability for delivery of the Lieu Deed and Bill of Sale to Bank Midwest upon receipt of a conforming request for delivery. However, if Bank Midwest requests delivery of the Lieu Deed and Bill of Sale with knowledge that such relief is not proper under Plan § T-2A, Debtor may recover damages proximately caused by such an improper request from Bank Midwest.

(j) <u>No Merger</u>:  Neither delivery of the Lieu Deed or Bill of Sale to Bank Midwest, nor recordation or filing of any document, shall effect or cause a "merger" of any lien preserved under ¶ (1) with or into fee title to any property.  Notwithstanding delivery of the Lieu Deed and Bill of Sale to Bank Midwest, all debt secured by the liens preserved under ¶ (1) shall remain enforceable for purposes of any foreclosure of any such lien that Bank Midwest may consider appropriate to address title issues.  Only an express written reconveyance or release of any such lien shall remove it as a charge against affected property.

(k) <u>Turnover/Surrender</u>:  If the Lieu Deed and Bill of Sale are delivered to Bank Midwest, Debtor shall immediately turn over and surrender possession and control of the Realty and all Business-related personal property collateral (including, without limitation, all equipment, all inventory, and all cash proceeds not already properly disbursed as compensation to Debtor) to Bank Midwest.  Absent Bank Midwest's express written consent, any further exercise of control over such personal property after a turnover demand shall constitute the tort of conversion.

(*l*) <u>Debtor's Request for Return of Lieu Deed</u>:  If Debtor fully pays the Class 2A claim in accord with ¶ (6), Debtor may request that the Escrow return the Lieu Deed and Bill of Sale to him.  Such a request must be signed or otherwise authenticated by Debtor or his counsel of record in Debtor's bankruptcy, must be delivered to the Escrow, and must state as follows:

**Request for Return of Halloum Lieu Deed After Full Payment**

**TO**:  Escrow ("Escrow") under Chapter 11 Plan ("Plan") of Yousif Halloum ("Debtor")

**FROM**:  Debtor

Debtor has fully paid the Class 2A claim in accord with ¶ (6) of Plan § T-2A.  Enclosed with this request please find Bank Midwest's acknowledgment of full payment, authenticated by an officer of Bank Midwest or by Bank Midwest's counsel of record in Debtor's bankruptcy, which must be provided before compliance with this request is permitted or required.

Therefore, Debtor hereby requests that the Escrow deliver the original Lieu Deed and Bill of Sale (as those terms are defined in Plan § T-2A) forthwith to Debtor at the following address: [Street Address for Delivery].

Upon receipt of a conforming request and the prescribed acknowledgment from Bank Midwest, the Escrow shall deliver the Lieu Deed and Bill of Sale to Debtor, at the street address given in the request, within 48 hours, *except* as provided in the balance of this ¶ (6)(*l*).  If the Escrow has any uncertainty about the authenticity of an ostensible full payment acknowledgment from Bank Midwest, the Escrow may defer delivery and request confirmation of such full payment in an email addressed as prescribed in ¶ (9)(a)(ii).  If Bank Midwest disputes full payment, the Escrow shall suspend return of the Lieu Deed and Bill of Sale to Debtor pending direction from the Bankruptcy Court or agreement between the parties.  However, if the Escrow has received no response within two business days after sending such an email soliciting confirmation of Debtor's

full payment to Bank Midwest, the Escrow shall treat the ostensible full payment acknowledgment from Bank Midwest as authentic and shall promptly return the Lieu Deed and Bill of Sale to Debtor.  If, after making such an inquiry and receiving no timely challenge to the asserted full payment, the Escrow returns the Lieu Deed and Bill of Sale to Debtor, then—even if the statements in Debtor's request for return are not accurate—the Escrow shall have no liability for return of the Lieu Deed and Bill of Sale to Debtor, but the Escrow shall be liable to Bank Midwest for damages proximately caused by honoring Debtor's request for return if the statements in Debtor's request are not accurate and either (i) the Escrow did not seek confirmation of full payment from Bank Midwest or sought confirmation and received a timely denial of full payment. If Debtor requests return of the Lieu Deed and Bill of Sale with knowledge that such relief is not proper under Plan § T-2A, Bank Midwest may recover from Debtor for damages proximately caused by such an improper request.  Conversely, if Debtor's request is proper but Bank Midwest improperly denies that it has received full payment of the Class 2A claim in accord with ¶ (6), Debtor may recover damages proximately caused by such an improper denial from Bank Midwest.

(m) <u>Other Breaches</u>:  If Debtor fails to perform obligations imposed by rights retained under ¶ (3) but such breaches are not among those identified in ¶ (8)(d), the parties' remedial rights and duties shall be as set forth in the documents identified in ¶ (3) or (as to anything not prescribed there) as established under applicable nonbankruptcy law.

(9) <u>Notice Addresses</u>:  Unless otherwise specified in Plan § T-2A, communications under § T-2A shall be directed as follows:

(a) If to Bank Midwest:

(i) For hard-copy/physical delivery, addressed to:

Attention: Franklin J. Gardiner
Community Banks of Colorado
5570 DTC Parkway
Greenwood Village, CO  80111
(ii) For email, addressed to:

Franklin J. Gardiner at fgardiner@nbhbank.com

*and*

13

Alan Scott Koenig at alan@asklaw.com

(b) If to Debtor:

(i) For hard-copy/physical delivery, addressed to:

Yousif H. Halloum
Flag City ARCO & Subway
14931 Flag City Boulevard
Lodi, CA 95242-9313

(ii) For email, addressed to:

Yousif H. Halloum at NOOR123@aol.com

*and*

Daniel S. Weiss at dweiss@danielweisslaw.com

(c) If to Escrow:

(i) For hard-copy/physical delivery, addressed to:

Michael J. Kasolas
P.O. Box 26650
San Francisco, CA  94126

(ii) For email, addressed to:

Michael J. Kasolas at kasolas@7trustee.net

*and*

Scott H. McNutt at smcnutt@ml-sf.com

Any party (*i.e.*, Bank Midwest, Debtor, or the Escrow) may change any of the contact information shown in this ¶ (9) for that party by written notice to the others at their then-applicable email addresses.  Effective on the first regular business day after such a notice has been transmitted, the new mail or email address so provided shall be deemed substituted for the corresponding address shown above.

**CLASS 2B:**  Class 2B consisting of the undersecured claim of Wachovia shall be fixed in the amount of $249,000.00 payable monthly beginning at the end of the first full month following confirmation amortized over 30 years and accruing interest at the rate of 5.25% per annum resulting in a monthly payment of $1,374.99.  The balance shall be an unsecured claim under Class 5.  This claim

is impaired.

**CLASS 2C:** Class 2C consisting of the under secured claim of Wells Fargo Home Mortgage shall be fixed in the amount of $193,000.00 payable monthly beginning at the end of the first full month following confirmation amortized over 30 years and accruing interest at the rate of 5.5% per annum resulting in a monthly payment of $1,095.83. The balance shall be an unsecured claim under Class 5. This claim is impaired.

////

**CLASS 2D:** Class 2D consisting of the fully secured claim of the County of San Joaquin for real and personal property taxes in the estimated amount of $138,698.00 shall be payable monthly beginning at the end of the first full month following confirmation amortized over 60 months accruing interest at the statutory rate of 18% per annum. The estimated monthly payment is $3,522.00. This claim is impaired.

**CLASS 3 CLAIMS:** The holders of Class 3 claims shall retain their liens on personal property of Debtor, which shall secure the amount of claims allowed pursuant to documents in effect at the time of filing of the petition in this case and/or documents affected thereafter pursuant to approval of the Court. All terms of obligations owed to holders of Class 3 claims shall remain as set forth in the existing documents except for the provisions for specific sub-classes below, which claims are impaired.

**CLASS 3A CLAIMS:** Class 3A consists of the under secured claim of Bank Midwest which shall be included in Class 2A and paid according to terms set forth under Class 2A above.

**CLASS 3B:** Class 3B consisting of the under secured claim of Element Financial Corp. shall be fixed in the amount of $6,000.00 payable within 30 days of the Effective Date. This claim is impaired.

**CLASS 4 CLAIMS:** Class 4 claims consist of executory contracts and leases that shall be deemed rejected upon confirmation except for the following subclasses:

**CLASS 4A:** Class 4A consists of the executory contract with BP West Coast that is in default approximately $328,691.01. Upon entry of the Order confirming this Plan, BP West Coast shall have relief from stay to offset the $10,000.00 deposit held by BP West Coast for their

15

performance of Debtor to be applied to the default amount reducing the claim to $318,691.01. This default shall be cured by a payment of $5,000.00 upon the Effective Date with the balance of $313,691.01 paid $3,500.00 per month until the resolution of litigation between Debtor and BP West Coast as defined in the Disclosure Statement is resolved at which time any recovery shall be first offset against obligations remaining under this Plan as Class 4A with the balance retained by Debtor as working capital.  In the event a balance remains following the resolution of the pending litigation, the balance shall be payable monthly in equal payments calculated by dividing the remaining balance by the number of months remaining to November 2017.  In addition, in the event the pending litigation is not resolved within 36 months of the Effective Date, BP West Coast shall receive the payment otherwise payable to the County of San Joaquin, Class 2D to be applied to the default amount.  This claim is impaired.

**CLASS 4B:** Class 4B consisting of the executory contract with Subway shall be assumed upon the Effective Date.

**CLASS 5 CLAIMS:** The claims of Class 5 consisting of the general unsecured claims shall receive a distribution of $120,000.00 over 20 quarterly payments of $6,000.00 payable pro rata without interest beginning at the end of the first full quarter following confirmation . These claims are impaired.

**CLASS 6 EQUITY INTERESTS:** Debtor shall retain his interest in the property of the estate subject to the rights of parties-in-interest under this Plan.

**GENERAL PROVISIONS**

Yousif Halloum shall continue to operate his business with compensation of $3,000.00 per month until such time as the Plan is completed.  In the event Debtor becomes disabled or dies, his wife, Iman Y. Halloum, shall become the Chapter 11 Trustee to complete the Plan.  The role of the Chapter 11 Trustee will end upon confirmation of the Plan.

To facilitate the payment of post confirmation quarterly fees and expedite entry of a final decree, Debtor shall file a Post-confirmation Status Report ("Report") with the Court, and serve a copy of the U.S. Trustee, not later than sixty (60) days after the date of the order confirming Debtor's Plan of Reorganization discussing the action taken and progress made toward substantial

consummation of the Plan. The Report should be sufficiently comprehensive to enable the court to determine (a) whether the order confirming the Plan has become final; (b) whether deposits, if any, required by the Plan have been distributed; (c) whether the property proposed by the Plan to be transferred has been transferred; (d) whether the Debtor or the successors of the Debtor under the Plan have assumed the business or the management of the property dealt with by the plan; (e) whether payments under the Plan have been commenced; (f) whether accrued fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) to the date of the Report have been paid, and (g) whether all motions, contested matters, and adversary proceedings have been finally resolved.

If the Debtor fails to make any installment payment required under this Plan as to the Federal taxes within 30 days after the due date of such Installment, or if the Debtor fails to make any deposit or payment of any currently accruing employment tax liability within 10 days of the due date of such deposit or payment of if the Debtor fails to file any required Federal tax return by the due date of such return, then the District Director or his delegate may declare the Debtor in default of this Plan.

If the District Director declares the Debtor to be in default of this plan; and the Debtor fails to cure the default within 30 days of written notification, then the entire unpaid liability under the confirmed plan, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor.

If full payment is not made within 14 days of such Demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law.

The Effective Date of the Plan shall be the date of the entry of the order confirming the Plan. Upon the entry of a discharge, assets of the estate shall re-vest in Debtor. Debtor shall receive a discharge of liability for debts incurred before confirmation of the Plan to the extent specified in 11 U.S.C. §1141 upon completion of the Plan. Any judgment obtained before the confirmation date in any court shall be null and void as a determination of the liability of Debtor with respect to any claim discharged. Debtor shall file a motion for a discharge and final decree upon completion of the Plan. Following the Effective Date and the resolution of any objection to claims, Debtor may file a motion to administratively close the case pending completion of the five year minimum required from the

time of filing to discharge during which the Debtor's assets become property of the bankruptcy estate. On five years from the date of the filing of the case, Debtor shall file a motion to reopen the case, without a further filing fee for the purpose of the entry of the discharge and the entry of the final decree.

At any time before the confirmation date, the Debtor may alter, amend or modify the Plan under §1127(e). After the confirmation date and before payments are completed under the Plan, the Plan may be modified in accordance with §1127(e).

The Chapter 11 case shall be administratively closed following the Effective Date when the objections to claims have been completed. The case will be reopened without further filing fee at such time as the five years has expired from the time of filing. During the time from the Effective Date through closing of the case, any material breach of the Plan may become grounds for relief from stay, conversion or dismissal of the case. A motion for relief from stay, conversion or dismissal may be filed by any party in interest that has been damaged by the breach. Such motion can also seek alternative relief such as relief from stay. The case shall be deemed reopened upon the filing of such motions without the payment of a filing fee to reopen.

## **JURISDICTION OF THE COURT**

The Bankruptcy Court shall continue to maintain jurisdiction subsequent to confirmation of the Plan to the maximum extent permitted by law.

The property of the estate shall re-vest in Debtor upon entry of discharge. The Effective Date of the Plan shall be the date of the entry of the order confirming the Plan.

Dated: February 25,, 2014          LAW OFFICES OF DANIEL S. WEISS
                                   Attorney for Debtor

                                   By:      /s/ Daniel S. Weiss

Dated: February 25,, 2014

                                            /s/ Yousif H. Halloum
                                            Debtor